# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeal of LaGue, Inc.  }
         }
         }  Docket No. 246-11-02 Vtec
         }
         }

## Decision and Order on Cross-Motions for Summary Judgment

Appellant LaGue, Inc. appealed from a decision of the Development Review Board (DRB) of the Town of Berlin, upholding the Zoning Administrator= s decision to issue a permit to Appellee-Applicants Applebee= s and Maplewood II, Ltd. rather than referring the matter to the DRB for site plan review. Appellants are represented by Brian J. Grearson, Esq.; Appellee-Applicants Applebee= s and Maplewood II, Ltd. are represented by Paul S. Gillies, Esq. The Town of Berlin did not enter an appearance in this matter. The parties have each moved for summary judgment, and supplemented their motions with a copy of the Zoning Bylaws at the Court= s request, as only excerpts from those regulations were supplied with Appellant= s motion.

The following facts are undisputed unless otherwise noted. The property at issue in the present appeal is located at the corner of Paine Turnpike and Route 62 in the Commercial zoning district. In or about 1992, Maplewood, Ltd. received at least site plan approval and a zoning permit for a 172[1]-seat restaurant at that location, and may also have applied for conditional use approval[2]. Neither the 1992 ZBA or Planning Commission site plan or conditional use decisions nor the approved site plan has been provided to the Court. The building was built and was used as a restaurant. If the restaurant=s hours of operation were addressed in the 1992 application or were made conditions of the 1992 approval, then any changes in the hours of operation proposed in the 2002 application would have required approval of an amendment to the 1992 approval. Appellant has not provided any documentation that the hours of operation were addressed in 1992.

Appellee-Applicants applied for a zoning permit to make alterations consisting of a so-called > tower entrance= to the restaurant and changes to the name on the signage. The application shows the setbacks and the height to be the same before and after the proposed changes. The original application showed the tower entrance as 57 square feet in area, but an added note states A no expansion in the footprint.@ Appellee-Applicants also proposed to use a room in the back for walk-in take-out service, to remodel the front to make a straight front rather than the prior design with indented windows, and to replace some of the exterior lighting. If changes were also proposed in the number of parking spaces, compared to the number approved or constructed for the former restaurant, that information has not been supplied to the Court in the parties= statements of material facts, affidavits, or documents. Appellee-Applicants assert in their memorandum that the > tower entrance= and the remodeling of the front of the building to eliminate the window indents were both contained under the roofline of the existing building, but have not provided that information in their statements of material facts, affidavits, or documents.

The Zoning Administrator first warned the application to go before the DRB for the > tower entrance= which appeared to add 57 square feet, but withdrew the application from the DRB= s agenda after learning that it was proposed to be constructed under the existing roof overhang. The Zoning Administrator then issued the permit as a conversion or change of use from one permitted use to another, under authority of ' 5.2(15) and ' 3.3.

Appellee-Applicants argue that Appellant= s notice of appeal to the DRB from the Zoning Administrator= s decision not to refer the matter to the DRB for site plan review only raised the issue of whether a traffic study was required, that therefore the DRB had no jurisdiction to consider other issues at its hearing of the appeal, and that therefore those issues cannot be raised in the appeal to this Court. To the contrary, the DRB had authority to consider any issues arising from the action of the Zoning Administrator on appeal to the DRB; that is, the Zoning Administrator= s grant of the permit and determination to withdraw it from the DRB= s site plan review agenda. In addition, the question of whether site plan approval was required is a legal issue to be considered anew by the Court in this de novo proceeding.

Under the present Zoning Bylaws, a restaurant/bar is a permitted use in this district, while a commercial drive-through facility is a conditional use. No comparable distinction is made in the use categories found in the Zoning Bylaws with respect to whether a restaurant has a separate > take-out= entrance or window, as long as it is not set up for > drive-through= service. Accordingly, as it remained in the same > restaurant/bar= permitted use category, the proposal did not need a permit for a change from one permitted use to another permitted use under ' 5.2(15).

Under the present Zoning Bylaws, no permit is required for a specific list of nine categories of activities. ' 5.1. Section 5.1(B) exempts interior repairs, alterations, and decorating, and also exempts exterior maintenance, repair or replacement that does not increase either the height or the footprint of the building. Thus the proposed interior alterations, including the reduction in the number of seats to 158, did not require a zoning permit[3].

Assuming[4], as Appellee-Applicants assert and as the Zoning Administrator determined, that the proposed exterior alterations (to the front and to the entrance) were to take place under the roofline of the existing building, then those changes also were exempt under ' 5.1(B) if the term A footprint@ is used in the Zoning Bylaws to include land under any overhangs, even if not enclosed by walls. We must first note that the exemption does not depend on the floor area of the building, but on its footprint. The Zoning Bylaws do not contain a definition of footprint. ' 7.2. However, we can be guided in this interpretation by the definition of the term A building front line@ as it is defined and as it is used in determining the front > setback= and > yard= of a lot, all three of which terms are defined in ' 7.2. All of those terms consider projections, such as porches or roof overhangs, whether enclosed or unenclosed, to be within the front line of the building from which the setback must be measured. Similarly, the definition of the phrase A degree of non-compliance@ in ' 7.2 demonstrates that an increase in volume or area within those existing projections is not counted for the purposes of determining whether alteration to a noncomplying building increase its degree of noncompliance with the setbacks. Guided by these definitions, we must conclude that the Berlin Zoning Bylaws treat the > footprint= of a building as the projection (in the architectural sense of the word) onto the ground of the building= s

roofline and all other extensions of the structure, such as porches and decks. Accordingly, if the assumption that they were designed under the roofline is correct, Appellee-Applicants= proposed changes to the front of the building and to the entrance did not need a zoning permit, under ' 5.1(B).

Under ' 5.2(10) the Zoning Administrator was authorized to act on changes to the signage for the building, unless the signs were to be newly illuminated.

All permitted uses must undergo site plan review under ' 5.5. The section is silent as to when amendments to a site plan are required, and does not provide any exemptions from or minor procedures for site plan review. Thus, any changes to the approved site plan which relate to the site plan criteria in ' 5.5 must apply for and obtain an amendment to the existing site plan approval, under the affected criteria, even though those changes do not trigger a full-blown site plan approval process for the aspects of the project that are unchanged. Thus, if the use of the room in the rear for walk-in take-out customers creates a new doorway and a new pedestrian use of the site, that proposed change should undergo site plan review under those aspects of ' 5.5(A) dealing with pedestrian safety and circulation. If the number or configuration of parking spaces or vehicular pathways through the site has changed, that proposed change should undergo site plan review under those aspects of ' 5.5(A) and (B) dealing with parking and on-site circulation. If the proposed replacement lighting changes the levels or configuration of illumination on the property, that proposed change should undergo site plan review under ' 5.5(G).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both parties= motions for summary judgment are GRANTED in Part and DENIED in Part. Assuming that the tower entrance and front remodeling were contained under the roofline of the existing building, the only permit required for the project from the Zoning Administrator was that addressing the change in signage and no amendment to the site plan approval was required for the front remodeling and tower entrance. The matter must be REMANDED to the Zoning Administrator to consider whether to refer any other proposed changes in lighting, parking, pedestrian access or any other aspect of the proposal to the DRB for consideration of amendments to the approved site plan, under '' 5.2(B) and 5.5.

On or before April 25, 2003, the parties shall submit the documents or stipulated facts necessary to support the roofline assumption, or shall submit a statement that material facts are in dispute on any issue, in which case we will hold a telephone conference on May 2, 2003 at 8:45 a.m. to discuss scheduling and disputed factual issues for trial. (Please be prepared to address whether time already available at the Barre courthouse on May 23 from 1:00 to 3:00 p.m. would be sufficient for that purpose.) Otherwise, effective April 28, 2003, this decision and order will be entered as a final order, closing this appeal, and the matter will be remanded to the Zoning Administrator for any further proceedings consistent with this decision.

Done at Barre, Vermont, this 16th day of April, 2003.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1]  Apparently the original application was for a 188-seat restaurant, which was reduced to 172 seats during the permit process. Similar discrepancies may well exist between the original application and the as-approved restaurant, with respect to number of parking spaces, square footage of the footprint, and front setback. The Court has not been provided with the as-approved site plan or permit decisions.

[2]  A commercial drive-through facility requires conditional use approval. As the 1992 permit was issued with a condition prohibiting a drive-through, it appears that one may have been originally proposed.

[3]  The proposed alterations potentially could have required an amendment to the project's site plan approval if they had, for example, increased the seating capacity of the restaurant.

[4]  See final paragraph of this decision regarding that assumption.